UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOBBY LOBBY STORES, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-879-R |
| ) | |
| DIRK D. OBBINK, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

Plaintiff Hobby Lobby Stores, Inc. ("Hobby Lobby"), by and through its attorney, Erin L. O'Roke of Hartzog Conger Cason LLP, as and for its Amended Complaint against the Defendant, Dirk D. Obbink, alleges as follows:

### PRELIMINARY STATEMENT

1. In this action, Plaintiff Hobby Lobby asserts claims for fraud and breach of contract in connection with its purchase of ancient papyri fragments (the "Fragments") from Dirk D. Obbink ("Obbink"). Pursuant to seven private sale agreements between February 2010 and February 2013 (the "Private Sale Agreements") between Hobby Lobby, as Buyer, and Obbink, as Seller, Hobby Lobby purchased the Fragments, along with other ancient objects, from Obbink (the "Purchases") for approximately $7,095,100 (the "Purchase Price"). Some of the Fragments, the total number yet unknown, had been stolen by Obbink from the Egyptian Exploration Society ("EES"), the custodian of the largest collection of ancient papyri in the world, including those from the Grenfell and Hunt excavations in the late nineteenth and early twentieth centuries at the site of

1

Oxyrhynchus, Egypt, housed at the University of Oxford, England ("Oxford"). Obbink was a Lecturer in Papyrology and Greek Literature in the Faculty of Classics at Oxford until February 2021 and was the General Editor of the Oxyrhynchus Papyri at EES until August 2016.

2. In connection with the sale of the Fragments to Hobby Lobby, Obbink made certain representations that, unknown to Hobby Lobby, were false. The Private Sale Agreements contained express warranties, none of which could be squared with the facts, that: (i) Obbink owned all right, title, and interest in the Fragments; (ii) Obbink had the unencumbered right to sell the Fragments; and (iii) Hobby Lobby's purchase of the Fragments would not infringe upon the rights of any third party. Obbink, prior to the Purchases, also knowingly made misrepresentations to Hobby Lobby that amount to both a breach of express warranty and fraud concerning the Fragments' provenance (*i.e.*, its history of ownership and chain of title).

3. The fact that some unknown number of the Fragments were stolen renders all the Fragments unsalable and worthless to Hobby Lobby, which stands to lose both the Fragments and the entire value of the Purchase Price it paid to Obbink.

4. Hobby Lobby commenced this action by filing a Complaint against Obbink in the Eastern District of New York ("EDNY") on June 2, 2021, asserting claims for fraud and breach of contract. Obbink was served with the Summons and Complaint at his residence in Oxford, England on September 7, 2021, in accordance with the rules of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Despite being validly served with process, Obbink did not appear or answer.

5. Hobby Lobby thereafter obtained a Clerk's entry of default and filed a motion for default judgment against Obbink. Hobby Lobby later moved to transfer the action to this district, to address the EDNY's question about personal jurisdiction over Obbink in New York and for matters of convenience. That motion was granted and the matter was transferred to this district on October 5, 2023. Hobby Lobby now files this Amended Complaint as a matter of right under Fed. R. Civ. P. 15(a)(1)(B) to add allegations pertaining to jurisdiction and venue in this district and to include additional details as to Obbink's fraudulent representations.

## THE PARTIES

6. Plaintiff Hobby Lobby is a corporation formed under the laws of the state of Oklahoma with a place of business at 7707 SW 44th St, Oklahoma City, OK 73179.

7. Upon information and belief, Obbink is an individual residing at 10 Pullens Field, Headington, Oxford, OX3, 0BU, United Kingdom.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Obbink because he transacted business in Oklahoma and/or because he committed tortious acts within Oklahoma. Among other things, Obbink sent the Fragments at issue in the Action from the United Kingdom to Hobby Lobby in Oklahoma City, where Hobby Lobby is headquartered. The contracts for the purchase of the Fragments were negotiated by Hobby Lobby from

Oklahoma City and the contracts were written under Oklahoma law. Further, Obbink participated in multiple meetings in connection with his sale of the Fragments with representatives of Hobby Lobby in Oklahoma City.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Ancient Papyri Fragments on the International Art Market

11. Papyrus is a paper-like material made from the pith of the papyrus plant that was used in ancient Egypt for documents, letters, and commercial transactions. Papyrus and the plural "papyri" can also refer to fragments of ancient documents written on such material.

12. Ancient Egyptian papyri have been collected by museums and private collectors in the United States since the nineteenth century. However, there are papyri on the market that are forged or of questionable origin. Collectors rely on the expertise of sophisticated dealers to verify an object's authenticity and legal ownership. Accordingly, the sale of material by a reputable dealer indicates to the art market that the dealer considers the object to be legally owned, and the art market, in turn, relies on the dealer's imprimatur of legality with respect to future sales, loans and exhibitions.

13. Obbink, one of the world's leading scholars of ancient papyri, also acted throughout his career as a private dealer of papyri fragments and other antiquities to the world's greatest museums and private collectors.

**Obbink's Fraudulent Sale of the Fragments**

14. As Obbink was aware, Hobby Lobby was active in the private art market in building a biblical antiquities collection to serve as the base collection for a new museum planned to be built in Washington, D.C., the Museum of the Bible ("MOTB").

15. Pursuant to seven Private Sale Agreements between February 2010 and February 2013, all of which were written under and subject to enforcement under Oklahoma Law, Hobby Lobby, through an agent, viewed the Fragments and consummated the following Purchases:

   a. February 6, 2010: Papyri fragments for $80,000 ("Purchase #1").

   b. February 15, 2011: Papyri fragments and other antiquities for $500,000 ("Purchase #2").

   c. July 22, 2010: Papyri fragments and other antiquities for $350,000 ("Purchase #3").

   d. November 20, 2010: Papyri fragments and other antiquities for $2,400,000 ("Purchase #4").

   e. July 20, 2011: Papyri fragments and other antiquities for $1,345,500 ("Purchase #5").

   f. March 7, 2012: Papyri fragments and other antiquities for $609,600 ("Purchase #6").

   g. February 5, 2013: Papyri fragments and other antiquities for $1,810,000 ("Purchase #7").

16. Hobby Lobby paid for each of the Purchases by wire transfer to a bank account in the name of Dirk D. Obbink at Comerica Bank in Ann Arbor, Michigan.

17. For each of the Purchases, Obbink made oral and written representations to Hobby Lobby that he was selling papyri that came from private collectors. For example, on August 22, 2012, Obbink sent an email to Hobby Lobby's agents, Carey Summers and Jerry Pattengale, which was later forwarded to Steve Green, Hobby Lobby's President, who approved the Purchases, in which Obbink represented that the Fragments in Purchase #7 were from the Collection of Yakup Eksioglu. That statement of origin was fraudulent because some of the Fragments in Purchase #7 were proven to have been stolen by Obbink from the EES.

18. Each of the Private Sale Agreements, at paragraph 4 (captioned "Seller's Representations and Warranties"), contained, among other things, express warranties that:

> a. the Seller owns all right, title, and interest in and to the Property;
> b. the Seller has the unencumbered right to sell the Property to Buyer; and
> c. the Buyer's purchase of the Property will not infringe upon the rights of any third party.

19. Obbink's representations about the previous private ownership of the Fragments and Seller's Representations and Warranties were fraudulently made. None of Obbink's representations and warranties could have been made honestly in light of the information Obbink possessed.

20. After each of Purchases, except for Purchase #7, Hobby Lobby imported the Fragments into the United States. Purchase #7, which contained four (4) papyrus

pieces of New Testament Gospels identified as Matthew 3:7–10, 11–12; Mark 1:8–9, 16–18; Luke 13: 25–27, 28; and John 8:26–28, 33-35 (the "Gospel Fragments"), was kept by Obbink for further research and never delivered to Hobby Lobby.

**The "Mistaken" Sale of the Gospel Fragments and Obbink's Agreement to Return the Purchase Price for the Gospel Fragments**

21. On or about December 2017, Obbink informed Hobby Lobby that he had "mistakenly" sold the Gospel Fragments in Purchase #7 and that they were, in fact, owned by his employer, the EES. On January 4, 2018, Hobby Lobby made a written demand to Obbink for the return of $760,000, representing the purchase price of the Gospel Fragments. On June 14, 2018, Hobby Lobby made a second demand on Obbink to return the $760,000.

22. On June 29, 2018, Obbink responded in writing to Hobby Lobby's refund request and agreed to return the $760,000 (the "Return Agreement"), stating that: "I will be able to begin payments in the second half of July and anticipate completing these by late August or early September, perhaps sooner. I will let you know if this changes. I hope this is okay, and I remain committed to making full payment ASAP." Hobby Lobby, however, received no payments from Obbink.

23. In a series of email exchanges in the fall of 2018 and the spring of 2019, Obbink informed Hobby Lobby that he needed to sell objects from his personal collection in auctions to pay the $760,000 pursuant to the Return Agreement.

24. On September 24, 2019, Obbink sent an email to Hobby Lobby stating that payments to him for objects sold at auction were dependent upon the issuance of an

export permit from the United Kingdom and that such permit would take 90 days to obtain. Further, he stated:

> "As mentioned to you in my previous email, I am entirely dependent on the auction houses' making payment to me to settle this outstanding refund. These items are not what you can easily get a buyer for, so now that it has been sold, I am confident we can close this amicably. I have from my personal funds made a payment of $10,000 and the receipt is attached. I crave your indulgence to exercise some patience to enable us get this export permit and have the clients make the payment so we can close this long drawn out issue. The funds I have sent is a proof of my commitment to complete this process as soon as possible. I assure you before the 90 days elapses, most likely end of October or first week of November, this will be resolved and the complete balance sent to you. I am convinced that this whole issue will be settled latest by November and if complete payment is not made by then, I will accept whatever actions you decide to take against me."

Attached to the email was a receipt for a $10,000 wire transfer to Hobby Lobby's bank account. Thereafter, no further payments were made by Obbink pursuant to the Return Agreement.

**Hobby Lobby and EES Discover the Thefts**

25. On or about April and May 2019, an MOTB representative contacted EES on behalf of Hobby Lobby to inquire about the circumstances surrounding Obbink's sale of the Gospel Fragments.

26. On June 4, 2019, a representative of MOTB travelled to London, United Kingdom and met with representatives of EES to discuss the Gospel Fragments. At the meeting, the MOTB representative provided the EES representatives with a copy of the Purchase Agreement for the Gospel Fragments along with images and descriptions of the objects. After discussion, the EES representatives concluded that the Gospel Fragments had been stolen from the EES by Obbink and sold to Hobby Lobby.

27. Thereafter, EES and MOTB met and conferred on all the Purchases and determined that other pieces of papyri had been stolen by Obbink from EES and sold to Hobby Lobby. To date, thirty-two (32) items have been identified as having been stolen by Obbink from EES and sold directly to Hobby Lobby. The investigation continues.

## FIRST CLAIM FOR RELIEF
(Fraud)

28. Hobby Lobby repeats and realleges each allegation set forth in paragraphs 1 through 25, inclusive, as if fully set forth at length herein.

29. Prior to the Purchases, for the purpose of inducing Hobby Lobby to consummate the Purchase, and as part of the basis of the bargain for the Purchase, Obbink represented to Hobby Lobby, expressly and unequivocally, in the Purchase Agreements and in emails and other conversations, based on his actual knowledge of the Fragments' ownership history, that (i) the Fragments had been previously owned by private collectors; (ii) Obbink owned all right, title, and interest in and to the Fragments; (iii) Obbink had the unencumbered right to sell the Fragments to Hobby Lobby; and (iv) Hobby Lobby's purchase of the Property would not infringe upon the rights of any third party.

30. Obbink further knew that Hobby Lobby (i) had expressly required Obbink's representation and warranties in the Purchase Agreements as a condition of the Purchases, (ii) was purchasing the Fragments to lend and/or donate to the MOTB, (iii) would rely on Obbink's statements, and (iv) would not purchase the Fragments unless Obbink's representations and warranties were true. Indeed, Hobby Lobby

required Obbink's representations and warranties in writing as an express condition of the Purchases.

31. Hobby Lobby reasonably relied on Obbink's representations and warranties in purchasing the Fragments. Although Hobby Lobby conducted a reasonable and customary due diligence investigation on the Fragments, it discovered no reason to question the truth, accuracy, and completeness of Obbink's various statements, misstatements, and omissions which cumulatively amounted to a lie. Hobby Lobby would not have made the Purchases if it had known that the Fragments had been stolen from EES by Obbink.

32. By reason of the foregoing, Hobby Lobby has been damaged as a proximate cause of Obbink's deceitful and fraudulent conduct and is entitled to rescind the Purchases and recover the Purchase Price of $7,095,100 together with interest from February 2013 and attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
(Breach of Contract)

33. Hobby Lobby repeats and realleges each allegation set forth in paragraphs 1 through 30, inclusive, as if fully set forth at length herein.

34. On June 29, 2018, Obbink entered into the Return Agreement to rescind the sale of the Gospel Fragments and return the $760,000 Hobby Lobby had paid in connection with its purchase of the Gospel Fragments.

35. Obbink made a payment on September 24, 2019 of $10,000 under the Return Agreement and agreed to pay the balance of the amount owed by November

2019. He made no further payments pursuant to the Return Agreement.

36.     Obbink breached the Return Agreement by failing to pay the $750,000 balance owed.

37.     By reason of the foregoing, Hobby Lobby has been damaged by Obbink's breach of the Return Agreement in the amount of $750,000 together with interest from September 24, 2019 and attorney's fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Hobby Lobby demands judgment against the Defendant, as follows:

(a)     rescinding the Purchases of the Fragments and requiring Obbink to return the $7,095,100 Purchase Price to Hobby Lobby together with interest from February 2013 as allowed by law;

(b)     awarding Hobby Lobby all attorney's fees and expenses and other costs it has incurred in this action; and

(c)     granting any further and different relief as the Court deems just and proper.

Respectfully submitted,

*s/Erin L. O'Roke*
Erin L. O'Roke, OBA No. 32787
HARTZOG CONGER CASON LLP
201 Robert S. Kerr Ave., Suite 1600
Oklahoma City, Oklahoma 73102
Tel. (405) 235-7000
Fax (405) 996-3043
eoroke@hartzoglaw.com

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I filed the attached document with the Clerk of Court and directed that the attached document be personally served on the following by hand delivery:

Dirk D. Obbink
11 Roundham Close
Kidlington, OX5 1SZ, United Kingdom

                                                  *s/Erin L. O'Roke*
                                                  Erin L. O'Roke